IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNYSLVANIA
ERIE DIVISION

| | |
|---|---|
| TUOMAS KRISTIAN MIRTTI, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 1:24-cv-77 |
| KRISTINA ELIZABETH MIRTTI, | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF THE CHILDREN**

Plaintiff and Petitioner, Tuomas Mirtti respectfully pleads as follows:

## I.   INTRODUCTION

1. This action is brought by Tuomas Kristian Mirtti ("Petitioner"), a citizen of Finland, to secure the return of his ▇-year old daughter, E.A.M. and his ▇-year old daughter, L.J.M. (together, "Children"; or, individually, "Child"). The Children are being wrongfully withheld, without Petitioner's consent or acquiescence, from their habitual residence of Finland, the country of their birth, the country of their school attendance, and the country of their consistent residence, to which they always intended to return.

2. Petitioner holds an M.D./Ph.D. from the University of Helsinki. He works as a Clinical Physician and University Research Professor with a special expertise in urological pathology. In the furtherance of his professional activities, Petitioner accepted an appointment as a Visiting Scholar at Emory University in Atlanta, Georgia, USA. The appointment started in August, 2022 for a limited, one-year duration. Children and

Respondent arrived in the United States in July 2022 pursuant and specifically related to Petitioner's engagement with Emory University.

3. Until this temporary move to Georgia, the children had resided uninterruptedly in Finland since their birth, except for brief, limited periods of vacation elsewhere.

4. Petitioner was legally permitted to live, work, and reside in the USA under a special "J-1 scholar visa" with an expiration date of July 31, 2023. (See J-1 Scholar Visa attached hereto as "Exhibit 1" and incorporated by reference herein.)

5. The Petitioner and Respondent intended to return to Finland at the end of Petitioner's one-year appointment to Emory University. Indeed, because of Petitioner's visa status, Petitioner could not have legally remained in the USA beyond that time.

6. The Children now reside in Warren, Pennsylvania, where they are being wrongfully withheld by their mother, Defendant/Respondent, Kristina Elizabeth Mirtti ("Respondent"). The Children were to have been returned to Finland for the commencement of the 2023-24 academic year. To that end, in March, 2023 the parties executed a Joint Agreement to enroll L.J.M. in a Finnish-English school to begin in the fall of 2023. Instead, despite the purchase of airline tickets for a return flight to Finland, Respondent withheld the children, refused to return to Finland when scheduled on July 31, 2023, and proceeded to flee with the Children to Respondent's childhood home in Warren. (See Flight Reservation Details attached hereto as "Exhibit 2" and incorporated by reference herein.) Respondent is trained as a lawyer and was licensed as such in the

Commonwealth of Pennsylvania. She currently provides legal services in the Northwestern Pennsylvania area.

7. After exhausting all attempts to reach an amicable resolution with Respondent, Petitioner has been forced to institute this action within the one (1) year period of Respondent's wrongful retention of the Children, which began in July 2023. Accordingly, the affirmative defense of Article 12 of the Hague Convention is not available to the Respondent.

8. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act ("ICARA"). (See Hague Convention attached hereto as "Exhibit 3" and incorporated by reference herein.)

9. The Hague Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other Contracting States, the United States of America and Finland (effective as of August 1, 1994). The International Child Abduction Remedies Act, 22 U.S.C. § 9001 -9111 (1988) (ICARA) implemented the Convention in the United States.

10. The objects of the Hague Convention are:

> Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
> 
> Article 1(b): To ensure that right of custody and of access under the law of one Contracting State are effectively respected in other Contracting States (*Id.*).

3

11.     The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of a child; it does not, however, permit the district court to consider the merits of any underlying custody dispute.

## II.    JURISDICTION AND VENUE

12.     This Court has jurisdiction over this case pursuant to 42 U.S.C. § 11603(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 11603 and 28 U.S.C. § 1391(b) because the Children and Respondent currently reside at the home of the Respondent's Mother, in the Erie Division of the Western District of Pennsylvania in Warren, Warren County, Pennsylvania, 16345.

## III.    STATEMENT OF FACTS

13.     Petitioner and Respondent are the parents of the Children. Petitioner and Respondent married on May 23, 2015 in Espoo, Finland and lived together in Espoo, Finland. In July, 2022, they traveled to the USA as an intact family unit for the purpose of Petitioner's temporary employment in Atlanta, Georgia. (See certified copy of the parties' Finnish marriage certificate attached hereto as "Exhibit 4" and incorporated by reference herein.)

14.     On ███████, 2015, L.J.M. was born in Espoo, Finland. (See L.J.M.'s birth certificate attached hereto as "Exhibit 5" and incorporated by reference herein.)

15.     On ███████ 2019, E.A.M. was born in Espoo, Finland. (See E.A.M.'s birth certificate attached hereto as "Exhibit 6" and incorporated by reference herein.)

4

16. The family lived together at their familial residence in Espoo Finland 02200. The parties resided together in Finland since March 2011, for a total thirteen (13) years. Respondent worked in Finland throughout the course of their marriage.

17. In Finland, the Children consistently attended daycare, pre-k and school in Finland. L.J.M. secured acceptance into a local school that provided Finnish-English instruction. Due to Petitioner's academic appointment to the USA for 2022-2023, Respondent requested for L.J.M.'s school acceptance to be delayed until the next academic year, thereby indicating the family's intention to return to Finland. Then, in March, 2023, pursuant to that deferred acceptance, the parties executed a **Joint** Application for school enrollment in Finland upon their return from the USA for the 2023-24 academic year. (See Joint Application attached hereto as "Exhibit 7" and incorporated by reference herein. (See e-mail correspondence confirming L.J.M.'s enrollment attached hereto as "Exhibit 8" and incorporated by reference herein.)

18. E.A.M., the youngest child attended an Early Childhood Education program at Tontunmäki päiväkoti daycare from February 1, 2021 to July 31, 2022 in Finland. (See E.A.M.'s enrollment in Finnish day care attached hereto as "Exhibit 9" and incorporated by reference herein.)

19. E.A.M.'s return to Finland and to the Fall of 2023 Finnish day care was confirmed in the attached emails. (See e-mail correspondence confirming E.A.M.'s enrollment in Finnish day care attached hereto as "Exhibit 10" and incorporated by reference herein.)

20.     The family left Finland and began living in the USA as a family in July, 2022 because Petitioner had received an appointment for a limited, defined period of time as a Visiting Associate Professor of Biomedical Engineering at Emory University in Atlanta.

21.     The family intended to return to Finland the following year (summer of 2023) after the expiration of Petitioner's temporary academic appointment and the expiration of his visa status.

22.     The parties purchased a return flight to Finland scheduled for July 31, 2023. (See "Exhibit 2".)

23.     Due to employment obligations at the University of Helsinki and the looming expiration of his J-1 visa, Petitioner returned to Finland without the rest of the family so that the Children could enjoy the summer holiday with their American relatives.

24.     On July 6, 2023, Petitioner suddenly learned that Respondent had unilaterally enrolled the children in school in Warren, Pennsylvania for the coming academic year, contrary to the parties' agreed upon plans and L.J.M.'s enrollment in a Finnish school. Petitioner never consented to the children being enrolled in school in the USA, much less in Warren, Pennsylvania, a location that offered Petitioner no employment prospects or professional opportunities. That Respondent did this took Petitioner totally by surprise, startled him, left him isolated from the Children and compelled him to take emergent steps to try to salvage his marital and parental relationships.

25.     When Petitioner confronted Respondent about the surreptitious enrollment of the Children in school in the USA, Respondent announced to him, for the first time, that

6

she intended to retain the Children in the USA and would not permit their return to Finland -- regardless of Petitioner's desire, wishes or parental rights. Respondent repeatedly lied about the parties having had previously agreed to this arrangement. Petitioner denied all of Respondent's claims, pointing out that the plan always was for the Children to return to Finland for the 2023-24 academic year, as confirmed, in part, by the Exhibits attached to this Petition.

26. Confronted with Respondent's refusal to bring the Children to their home in Finland, Petitioner tried to negotiate with Respondent (an American lawyer) in the hope of saving his marriage and avoiding protracted litigation, particularly since because of physical location, far away in Finland, subject to professional obligations, and with an expiring visa status that limited his ability to return to and remain in the USA.

27. However, while Petitioner focused his attention and actions on preserving the family based on his belief that Respondent wished for the marriage to continue, unbeknownst to Petitioner, Respondent filed for divorce in DeKalb County, Georgia.

28. On July 19, 2023, Respondent, an American lawyer, presented Petitioner with a document that Respondent prepared, which purported to contain terms to allow the Children to remain in the USA. That "Sham Agreement" explicitly represented that "... we are invested together in this marriage for life." In the days leading up to this Sham Agreement, Respondent pressured Petitioner to affix his electronic signature to this Sham Agreement. In none of her many communications to Petitioner, did Respondent disclose her actual intention to file for divorce. To the contrary, Petitioner assented to this Sham Agreement based on his very specific belief created by the Respondent that this Sham

7

Agreement presented his only opportunity to save his marriage and live with the Children as a family as they had before.

29. After duping Petitioner to secure his electronic signature, the very next day, on July 20, 2023, Respondent served Petitioner in Finland with her Petition for Divorce.

30. Even after being served with a divorce complaint and operating under the false assumptions of the Sham Agreement, Petitioner continued to search for an amicable resolution. Petitioner sought marriage counseling with Respondent. Petitioner traveled to Warren, PA on November 14 to November 27, 2023. Petitioner attempted to cajole and persuade Respondent to return the Children to their home in Finland. All of Petitioner's attempts to resolve this dispute short of international litigation were to no avail.

31. On December 11, 2023, Petition instituted a Hague Convention Application for the return of the Children. (See Hague Convention Application filed by Petitioner for E.A.M. attached hereto as "Exhibit 11" and Hague Convention Application filed by Petitioner for L.J.M. attached hereto as "Exhibit 12" incorporated by reference herein.)

32. On January 5, 2024, Petitioner instituted a custody action for the Children in Finland under Finnish law which remains pending. (See Finnish Custody Action attached hereto as "Exhibit 13" and incorporated by reference herein).

## IV. WRONGFUL REMOVAL AND RETENTION OF CHILDREN BY RESPONDENT: CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION

33. Respondent has wrongfully withheld the Children within the meaning of Article 3 of the Convention and continues to wrongfully retain the Children in the state of Pennsylvania, United States, in violation of Article 3 and despite Petitioner's efforts to

8

have the Children returned to their established home in Finland. Respondent, an American lawyer, has unfortunately made false representations, concocted sham "agreements," and has engaged in bad faith negotiations, all to thwart Respondent's attempts to return the children to Finland.

34. Petitioner never acquiesced or consented to the continued retention of the children from Finland or to their permanently living in the United States separate and apart from Respondent after his academic engagement in Georgia ended.

35. Respondent's retention of the Children is wrongful within the meaning of Article 3 of the Convention because:

   a. It is in violation of Petitioner's rights of custody as established by the law of Finland. (See a copy of the *Act on Child Custody and Right of Access* that is legally binding upon the parties in Finland attached hereto as "Exhibit 14" and incorporated by reference herein.) Specifically, Respondent's removal and retention of the Children is in violation of Petitioner's right as a joint custodian to determine the Children' domicile and place of residence. (*See* Hague Convention, Art. 5(a), defining "rights of custody" under Article 3 to include "in particular, the right to determine the children's place of residence").

   b. At the time of the Children's wrongful retention from Finland, Petitioner actually and actively exercised his rights of custody within the meaning of Articles 3 and 5 of the Convention and, but for Respondent's retention of the Children, Petitioner would have continued to exercise those rights.

9

c. The children were "habitually resident" with Petitioner in Finland within the meaning of Article 3 of the Convention immediately before their removal and retention by Respondent.

36. Respondent is presently wrongfully retaining the Children in the State of Pennsylvania, County of Warren, Warren, Pennsylvania.

37. The Children are now ▇ and ▇ years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to both Children.

38. This Petition is filed less than one year from Respondent's wrongful retention of the Children. Petitioner has never consented or acquiesced to Respondent's wrongful retention of the Children.

## V. PROVISIONS REMEDIES: (42 U.S.C. § 11604 & HAGUE CONVENTION, ARTICLE 16)

39. Petitioner requests that this Court issue an immediate order restraining Respondent from removing the Children from the jurisdiction of this Court. Petitioner also asks that this Court schedule an expedited hearing on the merits of this Petition.

## VI. ATTORNEY FEES AND COSTS: (42 U.S.C. § 11607)

40. To date, Petitioner has incurred attorneys' fees and costs because of the wrongful retention of the Children by Respondent.

41. Petitioner respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to dates as required by 42 U.S.C. § 11607.

## VII.   NOTICE OF HEARING: (42 U.S.C. § 11603 (c))

42.    Pursuant to 42 U.S.C. § 11603(c), Respondent shall be given notice of these proceedings in accordance with the laws governing notice in interstate child custody proceedings.

## VIII.   RELIEF REQUESTED

WHEREFORE, Petitioner, Tuomas Mirtti, prays for the following relief:

a.    An immediate temporary restraining order prohibiting the removal of the Children from the jurisdiction of this Court pending a hearing on the merits of this Verified Complaint, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Children from the jurisdiction of this Court pending a determination on the merits of the Verified Complaint;

b.    The scheduling of an expedited hearing on the merits of the Verified Complaint; an order that Respondent show cause at this hearing why the Children should not be returned to Finland, and why such other relief requested in the Verified Complaint should not be granted;

c.    A final judgment in Petitioner's favor establishing that the Children shall be returned to Finland, where an appropriate custody determination can be made by a Finnish court under Finnish law;

d.    An Order requiring the Respondent pay Petitioner's expenses and costs, including transportation costs, under 42 U.S.C. § 11607, such expenses and

11

costs to be resolved via post-judgement motion, consistent with the procedure outlined under Local Rule 54.2(A) of this Court; and

e. For any such further relief as may be just and appropriate under the circumstances of this case.

Respectfully submitted, this 15 day of March, 2024.

costs to be resolved via post-judgement motion, consistent with the procedure outlined under Local Rule 54.2(A) of this Court; and

    e. For any such further relief as may be just and appropriate under the circumstances of this case.

Respectfully submitted, this 15th day of March, 2024.

By: *Elisabeth Bennington*
Elisabeth Bennington, Esquire
Pennsylvania I.D. #85512
Counsel for Plaintiff/Petitioner

BENNINGTON LAW FIRM, LLC
5854 Ellsworth Avenue
Pittsburgh, PA 15232
(412) 404-8776, telephone
(412) 404-8724 facsimile
ebennington@bennington-law.com

## VERIFICATION

I am one of the attorneys for Plaintiff/Petitioner, Tuomas Mirtti. I make this verification on behalf of Petitioner because Petitioner is absent from this country. The above document is true based on the above-identified attorneys' investigation to date and communications between Bennington Law Firm, LLC and Mr. Mirtti, except as to the matters that are stated in it on information and belief and as to those matters I believe it to be true. I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing it true and correct.

This 15th date of March, 2024.

_____
Elisabeth Bennington, Esquire